UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Doris Forte, O.D., on behalf of herself and all other similarly situated persons, Plaintiffs, | § § § § | |
| v. | § § | No.02:07-cv-155 |
| Wal-Mart Stores, Inc., Defendant. | § § § | |

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

In its answer, defendant moved to dismiss this action, arguing that the Court lacks subject matter jurisdiction and that plaintiff has failed to state a claim upon which relief can be granted. *See* FED. R. CIV. PRO. 12(b)(1) and 12(b)(6). Additionally, defendant requests the Court suspend this lawsuit based upon the doctrine of primary jurisdiction. Finally, defendant moves in the alternative for a more definite statement under Rule 12(e). As explained below, the Court GRANTS defendant's motion with respect to plaintiff's claims for prospective injunctive relief. In all other respects, the Court DENIES defendant's motion to dismiss.

I. Subject Matter Jurisdiction

Defendant argues the Court lacks subject matter jurisdiction because: (a) plaintiff cannot establish constitutional or statutory standing to proceed; and (b) plaintiff cannot possibly recover damages in excess of the amount in controversy requirements of 28 U.S.C. § 1332(a)(1) and (d).

A. Standing

Although the demands of Article III must always be satisfied, there are some circumstances in class action cases in which courts decide the certification issues of Rule 23 before conclusively determining issues of standing. *See, e.g.*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997). This exception does not apply here because the certification issues are not logically antecedent to the issues of plaintiff Forte's standing to proceed. *Rivera*, 283 F.3d at 319. Stated differently, here "class certification [does] not create the jurisdictional issue." *Id.* at 319 n.6.

To satisfy the constitutional aspects of standing, plaintiff must plead a concrete injury in fact that is both traceable and redressable. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury in fact analysis is broad and covers more than economic injury. *Sabine River Authority v. U.S. Dept. of Interior*, 951 F.2d 669, 674 (5th Cir. 1992). There is an injury in fact when a plaintiff personally and individually suffers an invasion of a legally protected interest. *Lujan*, 504 U.S. at 560.

In this case, plaintiff's alleged injury in fact is based on §§ 351.408 and 351.605 of the Texas Occupations Code. Section 351.408 prohibits retailers and manufactures from controlling or attempting to control the professional judgment of optometrists. The statute specifically prohibits "setting or attempting to influence . . . the office hours of an optometrist." *Id.* at § 351.408(b)(1). The statute also provides remedies for "person[s] injured as a result of a violation of Section 351.408, including an optometrist who is a lessee of a . . . retailer." *Id.* at § 351.605.

Defendant argues that the use of the word "injured" in § 351.605 requires the plaintiff to plead facts establishing an injury beyond the alleged per se violation of the lease form. Defendant also argues that plaintiff was not a real party in interest to the lease agreement, and therefore is not a leasee under § 351.605 and has no standing.

Plaintiff has alleged that defendant unlawfully infringed upon her exercise of professional judgment and practice of optometry.(D.E. 18, ¶ 12–18). In addition to protecting the public, it is the plaintiff's judgment and practice that § 351.408 serves to protect. Even if plaintiff were not a real party in interest to the lease, she alleges that she is "[a] person injured as a result of a violation of Section 351.408." TEX. OCC. CODE § 351.605; (D.E. 18, ¶ 12–18). At this stage in the litigation, the Court must presume that plaintiff's general allegations encompass the specific facts necessary to support a claim. *Lujan*, 504 U.S. at 561. With respect to plaintiff's claim for damages, and for the purposes of Article III and the application of § 351.605, plaintiff simply has to plead that defendant infringed upon a legally congnizable interest of the plaintiff. Having done so, plaintiff has standing to proceed with her claims for damages.

With respect to plaintiff's claims for prospective injunctive relief, the Court finds that no live controversy exists. The theory of plaintiff's action is that defendant's lease form violates the Texas Optometry Act because it influences or attempts to influence the optometrists' days and hours of operation. The final lease renewal agreement between the parties expired on March 15, 2006. Plaintiff filed her complaint on April 3, 2007. Because the named plaintiff (i.e., the would-be class representative) and the defendant are not in a

leasor-leasee relationship, and the lease agreement and renewals that form the basis of this suit are no longer in effect, plaintiff's alleged injury is not prospectively redressible. *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 318 (5th Cir. 2002).

The parties have briefed the issue in terms of mootness, and plaintiff argues for the applicability of the mootness exception for wrongs capable of repetition but evading review. *See Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006) (explaining that this exception applies where the challenged action is too short to be fully litigated before it ceases and there is a reasonable expectation that the same complaining party will be subject to the same action again). Because plaintiff has not been in a leasor-leasee relationship with the defendant since before this litigation began, the issue is more appropriately viewed in terms of standing and redressability. While the mootness doctrine and its exception for evading review may be appropriate in a case where a leasor terminates or fails to renew a lease after the commencement of litigation, thus mooting claims for which standing previously existed, such facts are not before the Court. Furthermore, plaintiff has not shown that the nature of this controversy is one of a necessarily short duration, and so the evading review exception would not apply. *Jackson*, 465 F.3d at 246. Whether the matter is addressed in terms of standing or mootness, the outcome is the same.[1]

---

1. In deciding the issue as one of standing rather than mootness, the Court is mindful that there is added flexibility to the mootness doctrine in the context of class actions. *See, e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). However, because there has been no certification, and because the evading review exception is also not applicable, the class action exceptions would not apply even if the court were to address the issue in terms of mootness. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 111 n.11 (1975); *Weinstein v. Bradford*, 423 U.S. 147, 148–49 (1975); *Moss v. Lane Co., Inc.*, 471 F.2d 853, 855 (4th Cir. 1973).

The Court GRANTS defendants motion to dismiss plaintiff's claims for injunctive relief for lack of standing.

B.  Amount in Controversy

Defendant argues this Court lacks jurisdiction because the plaintiff's complaint does not support the amount in controversy requirements of 28 U.S.C. §§ 1332(a)(1) and (d). Where the plaintiff has alleged an amount that exceeds the statutory requirement, that amount controls if made in good faith.  *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).  To dismiss the action on the basis of the amount in controversy, it must be legally certain that the plaintiff cannot recover the amount required by the statute.  *Id.*

Plaintiff's amount in controversy allegations are based upon portions of the Texas Occupations Code that provide for damages, attorneys fees, and other remedies under the Texas Deceptive Trade Practices Act.  Section 351.605 provides that a person injured under § 351.408 is entitled to the remedies in § 351.603(b), which includes a "civil penalty not to exceed $1,000 for each day of a violation plus court costs and reasonable attorney's fees." Although § 351.603(b) by its terms contemplates the attorney general or the board seeking the civil penalty, it is made a private remedy by § 351.605.  As § 351.603(b) already exists as a public enforcement action  independent of § 351.605, and because 351.605 specifically references subpart b, the reference would be meaningless if the per diem penalty were not a private remedy.

Plaintiff alleges that defendant used an unlawful lease form in its dealings with plaintiff and four hundred other optometrists in the state of Texas.  Plaintiff further alleges that she worked under such a lease for approximately 1,076 days.  Plaintiff alleges the potential class members have had similar dealings.  Leaving aside any allegations of economic damages, the attorney's fees and potential penalties of § 351.603(b) are enough to establish the amount in controversy.  *Allen*, 63 F.3d at 1335.

II.  The Doctrine of Primary Jurisdiction

Defendant argues the doctrine of primary jurisdiction applies and that the Court must suspend this lawsuit until the Texas Optometry Board has had an opportunity to make certain determinations.

The doctrine of primary jurisdiction is a judicially created doctrine designed to determine the proper allocation of decision-making authority between courts and administrative agencies.[2]  The doctrine is not about the existence of subject matter jurisdiction, nor is it a doctrine of abstention based on concerns of federalism and comity.

Because this case involves a state statute and regulatory scheme, and because this is a diversity case, the Court must consider the doctrine of primary jurisdiction as it applies in the courts of the state of Texas. Texas courts apply the doctrine and defer to an administrative agency when: (1) there is an agency staffed with experts trained in handling

---

2. For a recent discussion of the doctrine and its history, see generally Note, *Primary Jurisdiction and the Circumforaneous Litigant*, 85 TEX. L. REV. 1289 (2007). The seminal United States Supreme Court decision on the doctrine is *United States v. Western Pac. RR Co.*, 352 U.S. 59 (1956).

complex problems within the agency's purview; and (2) there is great benefit in the agency uniformly interpreting laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations. *Subaru of Am. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). If the doctrine requires a Texas trial court to defer to an agency for an initial determination, the court abates the lawsuit and suspends adjudication of the claim until the agency has an opportunity to act on the matter. *Id.*

The Supreme Court of Texas recently discussed the doctrine of primary jurisdiction in a case involving a dispute between telecommunication companies over interconnection agreements that are regulated by the Public Utilities Commission (PUC). *In re Southwestern Bell Telephone Company, L.P.*, __ S.W.3d __, 2007 WL 1576025 (Tex. June 1, 2007). In deciding that the trial court erred for not applying the doctrine, the Texas Supreme Court emphasized that the PUC was staffed with experts that *routinely considered* the validity and enforceability of the interconnection agreements at issue. *Id.* at *3 (emphasis added). The PUC had the authority to interpret and enforce provisions of the agreements, and even the authority to approve or disapprove of the agreements before they went into effect. *Id.*

There is no evidence in this case that the Texas Optometry Board routinely considers the legality of lease agreements. Unlike the situation in *Southwestern Bell*, the Texas Optometry Board granted no prior approval or disapproval of the particular lease agreement in this case, nor is there a specific statutory grant of authority for the board to approve such agreements ex ante.

When courts apply the doctrine of primary jurisdiction, the agency in consideration

usually regulates within an especially technical or complex subject area. *See Penny v. Southwestern Bell Tel. Co.,* 906 F.2d 183 (5th Cir. 1990) (involving telecommunication regulations); *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 69 F.3d 1304 (5th Cir. 1995) (involving insurance regulations); *American Auto. Mfrs. Ass'n v. Massachusetts Dept. of Environmental*, 163 F.3d 74, (1st Cir. 1998) (involving environmental protection regulations); *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411 (Tex. 1961) (involving oil and gas regulations). The Texas Optometry Board is not an agency that promulgates or applies complex or technical regulations. The Board's chief functions are to license optometrists, process professional disciplinary complaints, and impose fees. *See generally* chapter 351 of the Texas Occupations Code and Title 22, part 14, of the Texas Administrative Code.

While the subject matter in this case is not complex, it does involve a specialized area of public policy. And while some aspects of that policy have been relegated to the Texas Optometry Board, at issue in this case is a specific and detailed statute that safeguards the professional judgment of optometrists. This statute was written by the legislature, not an administrative agency. Section 351.408 is a laundry list of relatively straightforward prohibitions, including a prohibition on "setting or attempting to influence . . . the office hours of an optometrist." TEX. OCC. CODE § 351.408(b)(1). This is the kind of statute and conduct that judges and juries routinely consider. Primary jurisdiction does not extend to a legal question that "is within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards

to the facts of the particular case." *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, 854 (2d Cir.1988). To the extent there is concern for the uniform application of the statute, such concern only exists because the courts of the state of Texas have not yet had the opportunity to construe its meaning.

Finally, in this case there are no predicate regulatory issues needed to establish a distinct common law or statutory claim, as is often the case when the doctrine of primary jurisdiction applies. *See Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001) (explaining that doctrine applies only when, in a suit . . . *not brought under the regulatory statute itself*, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve) (emphasis added). In this case, the plaintiffs are suing under the regulatory statute itself.[3]

The Court holds that the doctrine of primary jurisdiction does not apply to this case.

III. The Statement of a Claim upon which Relief can be Granted

The Court must not dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) unless the plaintiff cannot prove any set of facts in support of its claim that would entitle the plaintiff to relief. *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 469 (5th Cir. 2006). Because the Court holds that a lease agreement could itself violate the Texas Optometry Act, defendant's motion to dismiss under Rule 12(b)(6) is DENIED.

---

3. While plaintiffs also advance DTPA claims predicated on § 351.408, those tie-in claims are also made actionable by the statute itself. TEX. OCC. CODE § 351.604(3).

IV. Motion for a More Definite Statement

An order for a more definite statement is appropriate only where a pleading is so vague or ambiguous that the opposing party cannot respond in good faith with even a simple denial under Rule 8(b). FED. R. CIV. PRO. 12(e); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 3d § 1376 (2004). Plaintiff's complaint satisfies Rule 8. The Court DENIES defendant's motion for a more definite statement.

Conclusion

The Court GRANTS defendant's motion to dismiss plaintiff's claims for injunctive relief and DISMISSES those claims without prejudice. The Court DENIES defendant's motion as it relates to all other aspects of subject matter jurisdiction, as it relates to the doctrine of primary jurisdiction, and as it relates to the statement of a claim under Rules 12(b)(6) and (e).

ORDERED August 26, 2007.

_____
HAYDEN HEAD
CHIEF JUDGE